**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID DENT,
             *Plaintiff-Appellant,*

             v.

COX COMMUNICATIONS LAS VEGAS,
INC.; ROBERT HAYES; MC
COMMUNICATIONS, INC.; JOHN
WEHRMAN,

             *Defendants-Appellees.*

No. 05-15455

D.C. No.
CV-04-01197-RCJ

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, District Judge, Presiding

Argued and Submitted
February 16, 2007—San Francisco, California

Filed September 10, 2007

Before: Betty B. Fletcher and Richard R. Clifton,
Circuit Judges, and Edward F. Shea,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable Edward F. Shea, United States District Judge for the Eastern District of Washington, sitting by designation.

## COUNSEL

David Borgen (argued), Goldstein, Demchak, Baller, Borgen & Dardarian, Oakland, California, and Leon Greenberg, Las Vegas, Nevada, for the plaintiff-appellant.

Rick D. Roskelley (argued) and S. Libby Henninger, Litter Mendelson, P.C., Las Vegas, Nevada, for defendant-appellee MC Communications, Inc.

William D. Deveney (argued), Elarbee, Thompson, Sapp & Wilson, LLP, Atlanta, Georgia, and Carol Davis Zucker and Chantel D. Carmouche, Kamer Zucker & Abbott, Las Vegas, Nevada, for defendant-appellee Cox Communications Las Vegas, Inc.

## OPINION

B. FLETCHER, Circuit Judge:

In March 2004 plaintiff-appellant David Dent accepted overtime compensation that was owed to him by his former employer, MC Communications, pursuant to a settlement supervised by the Department of Labor ("DOL") in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(c). Dent signed a WH-58 standard form "Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation," which was prepared by the DOL and certified by MC Communications, acknowledging receipt of payment of unpaid wages "for the period beginning with the workweek ending 5-04-02 through the workweek ending 10-11-03."

On August 27, 2004 Dent commenced this suit claiming unpaid overtime wages under the FLSA, 29 U.S.C. § 216(b), as well as supplemental Nevada State Law statutory wage payments. The defendants-appellees Cox Communications Las Vegas, Inc. and MC Communications, Inc. (collectively, "the defendants"[1]) moved to dismiss Dent's FLSA claim on the ground that it had been released, in full, by the March

---

[1]John Wehrman and Robert Hayes also remain defendants in the instant action. They did not enter appearances before this court.

2004 settlement.[2] The district court granted the motion to dismiss Dent's FLSA claim and declined to exercise supplemental jurisdiction over Dent's state law claims.[3]

On appeal, Dent agrees that the March 2004 settlement fully waived his right to pursue any claims for the period specified on the WH-58—that is, from April 28, 2002 (i.e., the start of the workweek ending May 4, 2002) through October 11, 2003.[4] He maintains, however, that the settlement does not bar him from seeking compensation earned prior to that period.

The issue before this court is thus whether the DOL-supervised settlement, authorized by 29 U.S.C. § 216(c) and reflected in the WH-58, released Dent's claims under the FLSA for wages earned prior to April 28, 2002. We hold that it did not.

***

This case arises under the FLSA, 29 U.S.C. §§ 201-19, as well as Nevada state law. Jurisdiction in federal district court was proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

---

[2]Cox Communications also moved to dismiss Dent's claims under Nevada state law.

[3]The defendants filed answers asserting various defenses, including failure to state a claim on which relief can be granted. They did not file their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) until more than a month later, however. Because such a motion must be made before the defendant's responsive pleading, the defendants' motion should have been treated as a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(b), (c), (h)(2). Accordingly, we treat the district court's dismissal of Dent's claims as a grant of a motion for judgment on the pleadings. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).

[4]In light of this, Dent does not contest the dismissal of his complaint with regard to causes of action accruing on or after the workweek ending May 4, 2002.

This court has jurisdiction under 28 U.S.C. § 1291 to review the district court's dismissal of the case, and we conduct that review *de novo*. *See MacDonald*, 457 F.3d at 1081.

In ruling on the defendants' motion, the district court considered one document outside of the pleadings—Dent's WH-58. The parties agree that this document is authentic and acknowledge that it is integral to Dent's claim. In light of this, it was proper for the district court to consider the form without converting the defendants' motion into one for summary judgment. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n.4 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

Like the district court, we must accept as true the allegations in the plaintiff's complaint, unless contradicted by the WH-58. *See MacDonald*, 457 F.3d at 1081; *Ott v. Home Sav. & Loan Ass'n*, 265 F.2d 643, 646 n.1, 647 (9th Cir. 1958).

\*\*\*

The FLSA regulates, as a general matter, the minimum wages paid to workers. *See* 29 U.S.C. §§ 206-207. Section 7 of the FLSA provides for overtime compensation: an employee who works more than forty hours a week must be paid at least one and one-half times his or her regular rate for those additional hours. *Id.* § 207(a)(1).

Section 16 of the FLSA, 29 U.S.C. § 216, addresses courses of action available to remedy an employer's violation of the statute. Subsection 16(b) provides, in relevant part, for a private cause of action to recover unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The same subsection also allows a prevailing plaintiff to recover a reasonable attorney's fee and the costs of the action from the defendant. *Id.*

**[1]** Subsection 16(c), 29 U.S.C. § 216(c)—the focus of this case—authorizes the DOL to supervise what courts have termed the "settlement" of FLSA claims. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305-06 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The subsection provides:

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. . . . .

29 U.S.C. § 216(c).

**[2]** Section 255 of Title 29 of the United States Code supplies the statute of limitations for actions to enforce any cause of action for compensation due under the FLSA: an action must be commenced "within two years after the cause of action accrued," unless the cause of action arises "out of a willful violation." 29 U.S.C. § 255(a). In the case of a willful violation, the limitations period is extended to three years. *Id.*; *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988). A new cause of action accrues at each payday immediately following the work period for which compensation is owed. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006) (addressing the statute of limitations under 29 U.S.C. § 255). Dent's complaint alleges willful violations of the FLSA, so we must assume that a three-year statute of limitations—dating back to August 27, 2001—applies.

*\*\*\**

The WH-58 prepared by the DOL and executed by Dent and his former employer states:

> I, David Dent, hereby acknowledge receipt of payment in full from MC Communications . . . for the period beginning with the workweek ending 5-04-02 through the workweek ending 10-11-03 of unpaid wages, employment benefits, or other compensation due me . . . under . . . The Fair Labor Standards Act.

The WH-58, which is the DOL's June 1998 version of the form, also offers the following notice:

> Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received payment of the back wages due.

*** 

Dent argues that, in light of the language of the WH-58, he did not waive his right to sue under 29 U.S.C. § 216(b) for causes of action which accrued before April 28, 2002.[5] The defendants counter that Dent attributes undue significance to the dates memorialized on his WH-58. They contend that the form shows that Dent accepted payment for the back wages

---

[5]More specifically, in light of the three year statute of limitations for willful violations, Dent maintains that he is entitled to bring claims for the period from August 27, 2001 through April 27, 2002.

that the Secretary determined to be owed to him, and that—under the terms of 29 U.S.C. § 216(c)—this waived and released any right he had to bring suit against them under the FLSA. As summed up by the brief of Cox Communications, the defendants' position is that "no matter what time period the Secretary used in calculating the settlement amount," § 216(c) requires that the settlement addressed all unpaid wages owed to Dent and extinguished all future claims.

[3] We do not find, however, that the plain meaning of 29 U.S.C. § 216(c) unambiguously compels such a conclusion. *See United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) (explaining that courts must look first to the plain meaning of a statute to ascertain congressional intent, and noting that discerning the plain meaning requires consideration of the entire statutory scheme). The statutory language of the FLSA does not reject the possibility of a settlement payment and resulting waiver that are tied to a specified time period. The statute can be read as establishing the Secretary of Labor's authority, without limiting his discretion to use that authority to resolve fully a set of claims as defined by a particular time period.

Where the statutory language is ambiguous, we turn to the legislative history for evidence of congressional intent. *See id.* While the legislative history of § 216(c) does not address directly the question presented here, it sheds light on Congress's purpose in adopting the subsection. Subsection 216(c) was added in 1949 to facilitate the voluntary resolution of claims for back wages, while still providing protection for workers through DOL supervision.

To further the FLSA's objective of protecting certain populations of workers from substandard wages and oppressive conditions, the Supreme Court in the mid-1940s rejected plaintiffs' attempts to waive claims to liquidated damages under the FLSA in private settlements. *See, e.g.*, *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946). It was understood by

Congress that these holdings led to a decline in voluntary restitution by employers. *See* S. Rep. No. 81-640 (1949), *as reprinted in* 1949 U.S.C.C.A.N. 2241, 2249 (citing as a major cause for the decline in voluntary restitution between 1945 and 1948 the lack of assurance that an employer who agreed to pay back wages owed to an employee would not later also be held liable for damages and attorney's fees under § 216(b)).

Congress therefore sought "to assure employers who pay back wages in full under the supervision of the Wage and Hour Division that they need not worry about the possibility of suits for liquidated damages and attorney's fees." *Id.* Subsection (c) was designed to offer a choice to an employee who had been improperly denied wages under the FLSA: he or she might "choose between action by the Administrator under the new subsection (c) for simply the amount which is owed to him and his own individual right of action under subsection (b) for both back wages and liquidated damages together with a reasonable attorney's fee." *Id.*[6]

**[4]** While the Senate report described an action under § 216(c) as one for "the amount which is owed," the context makes clear that the report—and Congress more generally—sought to distinguish between an agreement for back wages under § 216(c) and the pursuit of additional damages and fees by bringing suit under § 216(b). There is no indication that Congress opposed DOL-supervised agreements regarding wages owed for a discrete time period, so long as all further claims—namely, liquidated damages, attorney's fees or costs—based on that period would be waived. Such an approach does not undermine Congress's interest in assuring the employer that all claims from that period had been addressed conclusively, and that the agreement would not be subject to

---

[6]For further discussion of this legislative history, see *Walton*, 786 F.2d at 305; *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977).

second-guessing by the courts.[7] *Cf. Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) (noting that "in construing the FLSA, we must be mindful of the directive that it is to be liberally construed to apply to the furthest reaches consistent with Congressional direction") (citing *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959)).

In sum, we disagree with the district court's determination that, under the terms of 29 U.S.C. § 216(c), Dent's DOL supervised settlement necessarily waived his claims under the FLSA for the period between August 27, 2001 and April 27, 2002.

Furthermore, Dent's WH-58 only provided adequate notice for the waiver of rights associated with the time period specified on the form—from April 28, 2002 (i.e., the start of the workweek ending May 4, 2002) and October 11, 2003.

**[5]** To establish a valid waiver, 29 U.S.C. § 216(c) plainly requires that the employee agree to accept the amount tendered by the employer, and that the employee receive payment in full of that amount. *See, e.g.*, *Sneed*, 545 F.2d at 539-40 (noting, also, that the Secretary of Labor's supervision of

---

[7]The defendants cite repeatedly to the DOL's amicus brief in *Niland v. Delta Recycling Corp.*, 377 F.3d 1244 (11th Cir. 2004). In that case, all parties acknowledged that the plaintiff Niland had agreed to accept compensation for overtime worked prior to February 8, 2002. The only question was whether the DOL had provided adequate supervision. The DOL sought to convince the court that Niland should not be allowed to revisit the agreed-upon settlement. *See* Brief for the Secretary of Labor as Amicus Curiae in Support of Defendant-Appellee Delta Recycling Corp. Supporting Affirmance of the District Court, *Niland v. Delta Recycling Corp.*, 377 F.3d 1244 (11th Cir. 2004) (No. 03-14553). The Eleventh Circuit ultimately held that the DOL had supervised the settlement adequately. *Niland*, 377 F.3d at 1247-48. Unlike Dent, Niland did not argue that he was entitled to seek wages for a time period outside of that which his § 216(c) settlement was explicitly intended to cover. The certainty and finality that the DOL advocated for in its amicus brief is not compromised by our decision here.

the settlement is required). As the Seventh Circuit explained in *Walton*, 786 F.2d at 305-07, "agreement" is more than the acceptance of funds, as it must exist "independent of payment."[8] Where notice is lacking, meaningful agreement—and thus valid waiver—cannot be found. In the DOL's amicus brief in *Niland*, which is cited by the defendants, the government observed that "an employee does not waive his right under section 16(c) to bring a section 16(b) action unless he or she agrees to do so after being fully informed of the consequences." Brief for the Secretary of Labor at 23, *Niland*, 377 F.3d 1244 (11th Cir. 2004) (No. 03-14553). Typically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver. *See Niland*, 377 F.3d at 1248 (describing the WH-58 as the form used by the DOL to inform employees of § 216(c)'s waiver); *Sneed*, 545 F.2d at 538 & n.3, 539-40; *see also* 29 C.F.R. § 516.2(b).

**[6]** The WH-58 signed by Dent explained that "acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act." Dent was, of course, accepting back wages owed to him, but arguably not all of the wages due. The form informed Dent that the back wages he agreed to accept were "for the period beginning with the workweek ending 5-04-02 through the workweek ending 10-11-03." In this context, the form's statement that he was giving up the right to sue for "*such* back wages" reads most naturally as indicating that Dent was waiv-

---

[8]Notably, while the filing of a suit by the Secretary of Labor under 29 U.S.C. § 216(c) (permitting actions to recover unpaid minimum wages or overtime compensation and liquidated damages by the Secretary) or § 217 (permitting injunctions) automatically terminates an employee's right to sue, the Secretary's approval of a payment amount does not. *See id.* § 216(b)-(c). It is a distinguishing feature that the employee's assent is required before the right to sue is waived under § 216(c)'s provision for supervised settlements.

ing the right to bring suit under Section 16(b), 29 U.S.C. § 216(b), for the specified period. Moreover, the form advised Dent only of the general two year statute of limitations; it did not give specific notice that a three year statute of limitations might apply.

**[7]** For the foregoing reasons, we conclude that Dent's claims were released only with regard to the time period specified on his WH-58. We therefore affirm the district court's dismissal of Dent's causes of actions under the FLSA accruing on or after the workweek ending May 4, 2002, and reverse the district court's dismissal of Dent's causes of actions under the FLSA accruing on or between August 27, 2001 and April 27, 2002.

**AFFIRMED IN PART; REVERSED IN PART**